# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:03-CR-156 |
| | ) | | (VARLAN/SHIRLEY) |
| | ) | | |
| JAMES L. STEFANIAK and | ) | | |
| EDITH M. JENSEN, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM AND ORDER

This matter is presently before the Court on the motions to withdraw guilty pleas filed by

both defendants James L. Stefaniak and Edith M. Jensen [*see* Docs. 138 and 139]. The issues raised

have been fully briefed by the parties [*see* Docs. 138, 139, 140, 141, 142, 143, 145, and 147],[1] and

oral argument was heard on March 15, 2005 [*see* Doc. 148]. For the reasons that follow, both

motions will be denied.

Also pending before the Court are the following defense motions: motion to dismiss

indictment [Doc. 149]; motion to adopt co-defendant's motion to dismiss indictment [Doc. 151];

motion for evidentiary hearing on motion to dismiss indictment [Doc. 155]; motion to clarify or

amend pre-trial release conditions, or alternatively, motion for judicial review of application of

---

[1] Additionally, each defendant filed an affidavit in a *pro se* capacity in support of their respective motion [*see* Docs. 144 and 146]. E.D.TN. LR 83.4(c) prohibits a party from acting on his or her own behalf after appearing by counsel. Because defendants have violated this local rule, the Court will not consider the arguments contained in their affidavits, many of which are already addressed by their attorneys' filings. However, even if the Court were to consider these affidavits, defendants do not present a fair and just reason for withdrawing their guilty pleas.

conditions [Doc. 159]; motion to restore prior conditions of release or for findings of fact [Doc. 162]; motion for evidentiary hearing [Doc. 165]; *pro se* "motion to examine criminal sworn testimony, react appropriately and dismiss indictments" [Doc. 166]; *pro se* "motion to examine criminal sworn testimony, react appropriately and dismiss indictments" [Doc. 168]; and motion to withdraw [Doc. 171]. For the reasons that follow, all of defendants' motions will de denied, except for the motion to withdraw which will be granted and the motion to adopt co-defendant's motion to dismiss indictment which will be granted to the extent that the Court will consider all arguments raised by defendant Stefaniak in the context of defendant Jensen's case.

## I.    Relevant Facts

On December 16, 2003, the grand jury returned an indictment [Doc. 3] against both defendants, who have successfully operated an adult novelty store called Sexy Stuf in Sevierville, Tennessee for a number of years. A superseding indictment [Doc. 7] was filed on January 27, 2004 and a second superseding indictment ("indictment") [Doc. 75] was filed on March 23, 2004.

Defendants were charged in count one of the indictment with a conspiracy to defraud the Internal Revenue Service ("IRS") by knowingly structuring cash transactions with banks and businesses as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period, in violation of 18 U.S.C. § 371. The banks and businesses at issue are required, as the case may be, to file a report with the IRS of each cash payment over $10,000 and each deposit, withdrawal, exchange of currency, or payment of transfer involving more than $10,000. Multiple currency transactions are treated as a single transaction when the bank or business knows that they

2

were by or on behalf of a person and resulted in either cash in or cash out totaling $10,000 during any one business day.

In counts two through thirty-four, defendants were charged with substantive structuring violations as provided in various sections of 31 U.S.C. § 5324. Defendant Stefaniak was also charged in count thirty-five with making a false statement after denying that he was James L. Stefaniak to special agents of the criminal investigation unit of the IRS, in violation of 18 U.S.C. § 1001.

Defendants were arrested in North Carolina and detained pending their transfer by the United States Marshals Service to the Eastern District of Tennessee. In February 2004, defendants made an initial appearance before the Honorable C. Clifford Shirley, Jr., United States Magistrate Judge, and retained counsel. After conducting lengthy detention hearings in February and March 2004, Judge Shirley ordered that both defendants be detained pending trial because there was no condition or combination of conditions of release that would reasonably assure their appearance at further proceedings [*see* Docs. 29, 45].

Each defendant entered into a plea agreement in mid April 2004 [*see* Docs. 98, 103]. In doing so, defendants pled guilty to the conspiracy count of the indictment, and the government agreed to dismiss the remaining counts at sentencing. The conspiracy count carries a maximum penalty of five years imprisonment, a $250,000 fine, supervised release of not less than three years and not more than five years, and a mandatory assessment of $100. The plea agreements state that the Court may impose any lawful term of imprisonment up to the statutory maximum and that the Court will "determine the appropriate sentence[s] under the Sentencing Guidelines and that this determination will be based upon the entire scope of the defendant[s'] criminal conduct, the

3

defendant[s'] criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines" [Docs. 98, 103 at p. 2].

Further, the plea agreements provide the following terms subject to defendants' compliance with the agreements: that the government will recommend that defendants be released pending sentencing; that defendants have no right to withdraw their pleas if the Court does not accept the recommendations or requests of the plea agreements as to any sentence; that withdrawal of the pleas is within the discretion of the Court under Fed. R. Crim. P. 32(e);[2] that the government will not oppose a two-level reduction for acceptance of responsibility under the provisions of United States Sentencing Guidelines ("U.S.S.G.") § 3E1.1(a); and that the government will move to decrease their applicable offense levels, if over sixteen, by one additional level pursuant to U.S.S.G. § 3E1.1(b).

Around the time of the plea agreements, defendant Stefaniak agreed to cooperate with the government's investigation of the case and to testify against defendant Jensen if necessary. Therefore, defendant Stefaniak's plea agreement also contains a provision that the government will move for downward departure from the applicable guidelines range pursuant to U.S.S.G. § 5K1.1 if he provides substantial assistance in the investigation or prosecution of other persons who have committed an offense. In July 2004, counsel for the government met with defendants and their counsel to determine their respective roles in the conspiracy. As a result of the information provided, the government filed a motion for downward departure on behalf of defendant Stefaniak on July 21, 2004 [*see* Doc. 121].

---

[2] As will be explained, Fed. R. Crim. P. 32(e) was actually codified as Fed. R. Crim. P. 11(d) at the time of these plea agreements.

In mid April 2004, each defendant also signed an agreed factual basis in which they agreed to the following facts:

> Between January 3, 2000, and October 3, 2002, Stefaniak and Jensen would take cash to make deposits and purchase cashier's/official checks in amounts less than $10,000 at the banks listed above. These cashier's/official checks, company checks and cash were used to purchase the assets and real estate in the listed company name as set out in Count One.

> On or about the date and at the bank or business listed in Count One, in the Eastern District of Tennessee, Stefaniak and Jensen conspired with each other to knowingly and for the purpose of evading the reporting requirements of 31 U.S.C. § 5331 and the regulations, structured [sic], assisted [sic] in structuring and attempted [sic] to structure and assist in structuring the listed cash and currency transactions with the bank and business. During the time frame of the conspiracy, the defendants did not file any corporate or individual income tax returns.

[Docs. 99, 104 at p. 2]

The Court conducted a change of plea hearing for defendant Stefaniak on April 23, 2004 and for defendant Jensen on April 26, 2004. Before accepting the guilty pleas, the Court engaged in a colloquy with each defendant in accordance with Fed. R. Crim. P. 11 to insure that the pleas were being made knowingly and voluntarily. After being sworn, each defendant agreed that they were satisfied with the advice of retained counsel; that no person put any mental or physical pressure on them to plead guilty; that they were offering to plead guilty because they were in fact guilty; that their sentence would be determined in conformity with the Sentencing Guidelines; and that they would not be permitted to withdraw their pleas on the basis of the sentence they might receive. Finding that each defendant plead guilty knowingly and voluntarily, the Court adjudged them guilty of the conspiracy charge. Each defendant also agreed to forfeit certain real and personal property and to pass clear title in the real property for application to their income tax liability. As a result of

the guilty pleas, upon the government's recommendation, the Court released defendants on bond with special conditions.

The sentencing hearings for both defendants were originally scheduled for July 26, 2004. However, the Court permitted several continuances of the sentencing hearings. Following the Supreme Court's January 12, 2005 decision in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), which rendered the Sentencing Guidelines advisory, defendant Jensen filed a motion to clarify the statutory maximum punishment prior to sentencing [Doc. 132] on February 15, 2005 [Doc. 132]. At a hearing on February 23, 2005, the Court denied the motion to clarify and advised the parties that if either party intends to request a sentence outside of the advisory guideline range, they must file a sentencing memorandum setting forth their position within fourteen days of receipt of the presentence report [*see* Doc. 137]. Shortly thereafter, on February 28, 2005, defendants filed the motions to withdraw their guilty pleas, and the Court took the matters under advisement following the hearing on March 15, 2005.

II.     **Analysis**

A.     **Standard for Withdrawal of Guilty Plea under Fed. R. Crim. P. 11(d)(2)(B)**

Fed. R. Crim. P. 11(d) provides the standard for withdrawal of a guilty plea:

A defendant may withdraw a plea of guilty or nolo contendere:

(1) before the court accepts the plea, for any reason or no reason; or
(2) after the court accepts the plea, but before it imposes sentence if:
    (A) the court rejects a plea agreement under Rule 11(c)(5); or
    (B) the defendant can show a fair and just reason for requesting the withdrawal.

6

In this case, the Court has already accepted the guilty pleas of defendants Stefaniak and Jensen; therefore, each defendant must show a "fair and just reason" in order to withdraw their guilty pleas under Fed. R. Crim. P. 11(d)(2)(B).

At the outset, it should be explained that the rule for withdrawal of a guilty plea was formerly codified as Fed. R. Crim. P. 32(e), which provided that a district court could permit a defendant to withdraw a guilty plea before sentencing if the defendant showed "any fair and just reason." *See* Fed. R. Crim. P. 32(e) (West 2001). This rule applied regardless of whether the court had accepted the guilty plea. *United States v. Mader*, 251 F.3d 1099, 1104 (6th Cir. 2001), *cert. denied*, 535 U.S. 1058 (2002).

The defendant carries the burden of proving that the withdrawal of the guilty plea would be justified, and the matter is left to the discretion of the district court. *United States v. Anderson*, 948 F.2d 1002, 1003 (6th Cir. 1991)(citation omitted), *cert. denied*, 502 U.S. 1117 (1992). In *United States v. Bashara*, the Sixth Circuit discussed the factors which should guide a district court in determining whether a defendant can show a "fair and just reason" for requesting the withdrawal of a guilty plea: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence of) a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior criminal experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. 27 F.3d 1174, 1181 (6th Cir. 1994), *cert. denied*, 514 U.S. 1033 (1995), *superseded on other grounds by statute*, *United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000).

7

In considering whether a defendant has offered a "fair and just reason," "[c]ourts have noted that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Anderson*, 948 F.2d at 1004 (citation omitted). Although the *Anderson* and *Bashara* Courts were operating under then existing Fed. R. Crim. P. 32(e), the same rationale and factors are still applicable to the analysis of withdrawing a guilty plea under Fed. R. Crim. P. 11(d)(2)(B). *See United States v. Striebel*, No. 03-1381, 2004 WL 603941, at *2 (6th Cir. March 22, 2004).

**B.      Application of Fed. R. Crim. P. 11(d)(2)(B) to Defendants Stefaniak and Jensen**

The Court will analyze each of the factors set forth in *Bashara* to determine whether defendants have demonstrated a "fair and just reason" for withdrawal of their guilty pleas as required by Fed. R. Crim. P. 11(d)(2)(B). As will be demonstrated, none of defendants' arguments provides a justifiable basis for withdrawing their guilty pleas. It should be mentioned initially that both defendants contend that the government does not oppose their attempts to withdraw their guilty pleas, pointing out that AUSA Blackwell made an informal offer to allow the withdrawals. The government, however, vehemently denies that it ever agreed to the withdrawals of defendants' guilty pleas and strongly opposes defendants' respective motions to withdraw.

**1.      The amount of time that elapsed between the plea and the motion to withdraw it**

The first factor, and indeed often the controlling factor, is the amount of time that elapsed between the plea and the motion to withdraw it. Defendant Stefaniak plead guilty on April 23, 2004 and defendant Jensen plead guilty on April 26, 2004, and both filed their motions to withdraw their guilty pleas on February 28, 2005. Therefore, both defendants waited over three hundred days or

8

nearly ten months from entry of their guilty pleas before moving to withdraw. The Sixth Circuit has denied motions to withdraw guilty pleas on the basis of delays far shorter than the delays at issue. *See e.g. United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996), *cert. denied*, 510 U.S. 973 (1996) (sixty-seven day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five day delay); and *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five day delay). Indeed, the Sixth Circuit in *Alexander* held that a "delay of almost five months is certainly beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate" a guilty plea. 948 F.2d at 1004.

Defendant Stefaniak admits that the delay has been "lengthy" but contends that there have been "extraordinary events that he should not be blamed for" [*see* Doc. 141 at p. 2]. First, defendant Stefaniak points out that his sentencing hearing was delayed due to the illness of AUSA Guy W. Blackwell. The government responds that other than AUSA Blackwell's three-week medical emergency in June 2004, defendants were the ones who requested the additional continuances of their sentencing hearings.

The Court specifically recalls the medical emergency suffered by AUSA Blackwell, which obviously caused a brief excusable delay in June 2004. Other than that, there is no practical way for the Court to reconstruct which party requested the additional continuances of the sentencing hearings because the record does not reflect this information. Regardless of the source of the continuances, however, the Court finds that defendant Stefaniak and defendant Jensen, to the extent that she also adopts this basis, fail to offer a valid reason why they did not seek to withdraw their guilty pleas much earlier following AUSA Blackwell's illness. Nothing in this argument convinces the Court that these defendants engaged in a "hastily entered plea made with unsure heart and

9

confused mind." *See Anderson*, 948 F.2d at 1004 (citation omitted). Therefore, the Court finds no justifiable delay presented in the first basis for relief regarding AUSA Blackwell's illness.

As the second, more prominent basis for relief, defendant Stefaniak maintains that the government requested continuances of his sentencing hearing because of the significant Supreme Court decision of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), which was filed on June 24, 2004. However, defendant Stefaniak admits to at least requesting the most recent delay of his sentencing hearing because of the change in the law as a result of the Supreme Court's *Booker* decision issued on January 12, 2005.

On this issue, defendant Stefaniak frames his argument in the following way:

> In this particular instance, delay has been as a result of an unusual combination of events - a combination of events which has resulted in a ruling by this Court that Stefaniak can be sentenced, in the Court's own discretion, to considerably more time than what the mandatory guidelines would have mandated, prior to the decision in Blakely and Booker, and that fact, alone, would be grounds to allow the Defendant Stefaniak to withdraw his plea, based on the "fair and just" language in Rule 11(d)(B).... The momentous United States Supreme Court decisions that did not exist at the time of the plea negotiations provide ample reasons for not withdrawing their plea earlier. The Defendant Stefaniak now knows that the Sentencing Guidelines are no longer mandatory and that Judge Varlan can sentence him up to 60 months in federal prison, which is considerably more than the Mandatory Sentencing Guidelines.

[Doc. 141 at p. 2]. Similarly, defendant Jensen asserts:

> [T]he Motion for withdrawal has been filed within a few days of this Court's clarification of the effect of *Booker v. United States* on the maximum punishment she faces. The United States Supreme Court in its ruling in *Booker v. United States* has changed a major premised of Defendant's plea which operates to increase her potential punishment from a Base Offense Level for "Structuring Transactions" under the Guidelines §2S1.3 corresponding to a zero to six months punishment to a statutory maximum of five years under 18 U.S.C. §371.

[Doc. 140 at p. 2].

10

Thus, according to defendants' logic, the new advisory nature of the Sentencing Guidelines could lead to a higher maximum sentence and this realization should allow them to withdraw their guilty pleas. Such motivation, however, is clearly tactically based and cannot be a valid reason for withdrawal of their guilty pleas. Defendants' tactical approach is also revealed in the timing of their filings because the motions to withdraw dated February 28, 2005 were preceded by defendant Jensen's motion to clarify statutory maximum punishment prior to sentencing [Doc. 132] dated February 15, 2005, which the Court summarily denied on February 23, 2005 [*see* Doc. 137].

To reiterate, the courts have consistently held that the primary reason for allowing withdrawal of a guilty plea is to allow a hastily entered plea made with unsound heart and mind to be undone, not to enable a defendant to change his plea for tactical purposes. *See Alexander*, 948 F.2d at 1004 (citation omitted). The change in the law implemented by the *Booker* decision in January 2005 does not indicate that defendants entered into their guilty pleas hastily, reluctantly, or confusedly in April 2004. In fact, based upon the affirmative sworn responses that defendants were satisfied with the advice of retained counsel, that no person put any mental or physical pressure on them to plead guilty, and that they were offering to plead guilty because they were in fact guilty, the Court is left with the unmistakable conclusion that defendants entered their guilty pleas voluntarily and without haste, reluctance, or confusion.

Moreover, in the recent decision of *United States v. Bradley*, 400 F.3d 459, 460 (6th Cir. 2005), the Sixth Circuit joined four other circuits in rejecting the argument that a defendant's case should be remanded for resentencing under the *Booker* decision. In *Bradley*, the defendant argued that his sentence should be invalidated because he did not know when he plead guilty that the Supreme Court would later declare the Sentencing Guidelines to be advisory in *Booker*. *Id.* at 464.

11

In response, the Sixth Circuit made it clear that "the change in law cannot undo his plea," noting that the Supreme Court in *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), has "explained that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at 463-64.

Under the authority of *Bradley*, the change in the law making the Sentencing Guidelines advisory in *Booker* cannot undo defendants' guilty pleas in this case, and therefore the Court finds no justifiable delay presented in the second basis for relief. Their plea agreements specifically provide that the Court may impose any lawful term of imprisonment up to the statutory maximum, which is five (5) years under 18 U.S.C. § 371, and that the Court will "determine the appropriate sentence[s] under the Sentencing Guidelines and that this determination will be based upon the entire scope of the defendant[s'] criminal conduct, the defendant[s'] criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines." Further, the plea agreements provide that defendants have no right to withdraw their pleas if the Court does not accept the recommendations or requests of the plea agreements as to any sentence and that withdrawal of the pleas is within the discretion of the Court. Moreover, at the plea hearing, defendants acknowledged that their sentences would be determined in conformity with the Sentencing Guidelines and that they would not be permitted to withdraw their pleas on the basis of the sentence they might receive.

Defendant Jensen especially appears to be operating under the mistaken impression that the "statutory maximum punishment faced by [her] under the [mandatory] Guidelines §251.3(a)(2) is the Base Offense Level of 6 which equates to 6 months of imprisonment" [Doc. 132 at p. 2; *see also* Doc. 140 at p. 2]. There is simply no basis in law to support the proposition that defendant Jensen

12

was only subject to a statutory maximum of six months imprisonment for a conspiracy crime that carries a statutory maximum of five years imprisonment. In addition, at the time of the revised presentence report dated August 23, 2004, the Sentencing Guidelines for both defendants provided an imprisonment range of eighteen to twenty-four months.[3]

Additionally, the Court observes that, subsequent to the decision in *Booker*, the Court is aware of no other defendant in this district who has argued that he or she should be punished under the previous mandatory Sentencing Guidelines. In most if not all cases, it has been to a defendant's advantage to be sentenced following the *Booker* decision because the Court must consider all of the factors listed in 18 U.S.C. § 3553(a) including the advisory nature of the Sentencing Guidelines in reaching a sentence that is reasonable in light of all of the circumstances. *See Booker*, 125 S. Ct. at 767. The Court will continue to sentence defendants utilizing the Sentencing Guidelines, the only difference now being that they are advisory instead of mandatory. At the February 23, 2005 hearing in which the Court summarily denied defendant Jensen's motion to clarify the statutory maximum punishment prior to sentencing, the Court advised the parties that if either party intends to request a sentence outside of the advisory guideline range, they must file a sentencing memorandum setting forth their position within fourteen days of receipt of the presentence report [*see* Doc. 137]. If defendants do so, the Court will give due consideration to any such memorandum along with any reply from the government.

---

[3] For the record, the Court notes that the government indicated at the hearing of the motions to withdraw that the potential range of imprisonment under the advisory guidelines may now have to be reassessed due to defendants' conduct of possibly obstructing justice and of no longer accepting responsibility.

13

Therefore, an analysis of the first and often controlling factor reveals that defendants waited over three hundred days from entry of their guilty pleas before moving to withdraw. Defendants' arguments that the AUSA's illness and the decisions of *Blakely* and *Booker* constitute extraordinary events that justified the lengthy delay are without merit and reveal nothing more than tactical motives. Consequently, defendants have failed to present a fair and just reason for withdrawal of their guilty pleas under this critical factor.

### 2. The presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings

The second factor is the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings. In this regard, defendant Stefaniak argues that the Supreme Court decisions in *Blakely* and *Booker*, which did not exist at the time of plea negotiations, provide ample reasons for not withdrawing his guilty plea earlier, while defendant Jensen argues that she filed the motion to withdraw her guilty plea within days of the Court's clarification of the effect of *Booker* on punishment and therefore her grounds for withdrawal could not have been presented earlier. As the Court has addressed extensively in discussing the first factor, defendants' arguments are not persuasive because changes in the law cannot undo guilty pleas that are made voluntarily. *See Bradley*, 400 F.3d at 463-64.

With respect to this factor, defendant Stefaniak also claims that the availability of new evidence should allow him to withdraw his guilty plea. Specifically, defendant Stefaniak contends that he can present witnesses from the casino who would demonstrate that the income that was allegedly "structured" or "skimmed" was not business income at all but non-taxable casino winnings. He further asserts that the IRS agent who investigated this case testified falsely in the grand jury proceedings and detention hearing.

14

In *Alexander*, the Sixth Circuit also had to determine whether a guilty plea could be withdrawn based on alleged new evidence relating to a suppression issue. 948 F.2d at 1004 In denying the motion, the Court held in part:

> The witnesses [the defendant] wishes to present at a reopened suppression hearing were available at the time of the first hearing. They were known to his team of attorneys at that point. Alexander has failed to articulate any reason for not calling them then, other than a tactical decision, nor has he advanced any particularized reason to call them now. In fact, he has not even indicated, by way of affidavits or otherwise, the anticipated nature of their testimony, beyond the reinforcement in some unspecified manner of his own testimony at the earlier hearing. This clearly does not constitute a fair and just reason for vacating a plea.

*Id.* In this case, defendant Stefaniak's argument similarly fails.

Neither defendant can now be heard to present evidence obtained over three hundred days after pleading guilty in an attempt to eliminate their admitted guilt. Moreover, defendants' purported reason for the delay in presenting this evidence reveals their tactical motives of challenging the underlying facts of the indictment and detention, which the Court will not permit at this late stage. Simply put, the reasons advanced by defendants under this factor do not provide a fair and just reason for withdrawal of their guilty pleas.

### 3. Whether the defendant has asserted or maintained his innocence

The third factor, which is considered to be a key one, is whether the defendant has asserted or maintained his innocence. Courts have taken into account the absence of a defendant's vigorous and repeated protestations of innocence. *Alexander*, 948 F.2d at 1004 (citing *United States v. Saft*, 558 F.2d 1073 (2d Cir. 1977)).

With respect to this factor, defendant Stefaniak argues the following: "At the time of the plea agreement negotiations, there can honestly be said to exist a frame of mind, in Stefaniak, that he might die in the Blount County Jail and the plea agreement was the only route to be released.

Other than the guilty plea which resulted from the set of facts discussed herein, there has been no admission of guilty [sic] by Stefaniak, and in fact, he has proclaimed his innocent [sic] consistently, both in valid motions to suppress and motions to dismiss the indictments" [Doc. 141 at p. 4]. According to defendant Stefaniak, the "set of facts" under which his guilty plea was obtained includes: being arrested in North Carolina on an improper indictment; sent on a circuitous and excessive route to the Eastern District of Tennessee; being detained by Judge Shirley without adequate proof of being a flight risk; having his house scavenged for evidence by his landlord at the direction of the IRS; and contracting and enduring a prostate illness in jail that caused enormous pain without assistance from jail personnel. It is, of course, these allegations about judicial and IRS officers that has led the government to state its intention to seek an obstruction of justice adjustment.

Again, defendant Stefaniak's tactical motives are apparent. He cannot now be heard to complain that the indictment by the grand jury and his detention by Judge Shirley, both of whom made credibility determinations based upon all of the evidence available, were improper and somehow contributed to his pleading guilty to conspiracy to structure cash transactions. Moreover, defendant Stefaniak abandoned his motion to suppress and motions to dismiss the indictment, which were denied as moot without prejudice to refile, by electing to plead guilty [*see* Doc. 97]. The only time that he has maintained his innocence is from the time of his arraignment in February 2004 to the time of his plea agreement in April 2004. After that point in time, defendant Stefaniak never contended that he was actually innocent – only that he had a legal defense.

With respect to defendant Stefaniak's medical condition, the Court notes that defendant Stefaniak verified under oath that no person put any mental or physical pressure on him to plead guilty and that he never brought his medical situation to the Court's attention at the change of plea

hearing or any other time. Moreover, the government represents that medical help was indeed available to defendant Stefaniak while incarcerated. In fact, the government introduced medical records at the hearing on the motion to withdraw revealing that defendant Stefaniak was examined on April 7, 2004 and shown to be a "well-developed, well-nourished male in no acute distress"[4] [*see* Govt. Ex. 1 to March 15, 2005 hearing], and those records further reflect that he did not seek further medical attention when he was released on bond.

Defendant Jensen states that she has consistently maintained that her actions were not illegal due to the nontaxable nature of her casino winnings, as well as the government's inability to prove "skimming"on her part. As the government points out, it makes no difference whether the cash was taxable or "skimmed" for purposes of structuring, only that the cash was knowingly structured to evade the reporting requirements. Indeed, it is well established that gambling proceeds constitute taxable income. *See Dubois v. Commissioner of Internal Revenue*, T.C. Memo 2003-222 (2003); *McClanahan v. United States*, 292 F.2d 630, 631-32 (5th Cir. 1961), *cert. denied*, 368 U.S. 913 (1961).

In addition, defendant Jensen relies on *Ratzlaf v. United States*, 510 U.S. 135, 114 S. Ct. 655, 126 L. Ed. 2d 615 (1994), to support her position that her guilty plea to the complex charge of structuring is not determinative of guilt. She cites the following passage from the dissent: "If a person has legitimate business reasons for conducting frequent cash transactions, or if the transactions genuinely can be characterized as separate, rather than artificially structured, then the

---

[4] The Court notes that counsel for defendant Stefaniak objected to the introduction of these medical records and stated that he would obtain an affidavit from a doctor revealing that Stefaniak had toxic levels of urine in his system. As of this date, counsel has not provided the Court with any further medical proof.

17

person is not engaged in 'structuring' for the purpose of 'evasion.'" *Id.* at 155 n.6.  However, *Ratzlaf*, which held that a defendant must act "willfully" to be guilty of structuring, was effectively overruled by subsequent legislation.  *See* Riegle Community Development and Regulation Improvement Act of 1994, Pub. L. No. 103-325, § 411, 108 Stat. 2160, 2253 (codified as 31 U.S.C. §§ 5322(a), (b), 5324(c) (Supp. 1995)).  Moreover, defendant Jensen's actions cannot constitute legitimate business transactions or be genuinely characterized as separate rather than artificially structured when she has specifically admitted that she knowingly structured cash transactions to evade the reporting requirements.  The only time that she has maintained her innocence is from the time of her arraignment in February 2004 to the time of her plea agreement in April 2004.

Both defendants Stefaniak and Jensen agreed that they were pleading guilty because they were in fact guilty and entered guilty pleas which the Court accepted as being voluntary.  They specifically agreed that they were guilty of conspiring to knowingly structure cash transactions for the purpose of evading reporting requirements.  "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  *United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).  When the "fair and just" reason standard was added to the federal rules, the Advisory Committee emphasized the seriousness of entering a guilty plea:

> Given the great care with which pleas are taken under this revised Rule 11, there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.  "Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.  In fact, however, a guilty plea is no such trifle, but 'a grave and solemn act,' which is 'accepted only with care and discernment.'"

18

Fed. R. Crim. P. 32(e) advisory committee's note (*quoting United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975), *in turn quoting Brady*, 397 U.S. at 748).

The Court finds therefore that this record is devoid of vigorous and repeated protestations of innocence by defendants; consequently, they have failed to articulate a fair and just reason to withdraw their guilty pleas under this key factor. Allowing defendants to withdraw their guilty pleas under the circumstances presented "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *See United States v. Hyde*, 520 U.S. 670, 677, 117 S. Ct. 1630, 137 L. Ed. 2d 935 (1997); *see also Mader*, 251 F.3d at 1105.

### 4. The circumstances underlying the entry of the guilty plea

The circumstances underlying the entry of the guilty plea comprise the next factor which the Court must consider. With regard to this factor, the government points out the following: defendants expressed an interest in resolving the case with guilty pleas during the pre-trial phase; several meetings followed between the government, defendants and their retained counsel, and the United States Probation Office to determine the best and worse case scenarios for sentencing; defendants' tax liability and forfeiture of their real estate holdings were discussed; AUSA Blackwell took the rare step of meeting with defendants and counsel in the Blount County Jail on April 19, 2004 to discuss various aspects of the plea agreements; an IRS agent and revenue officer returned to the Blount County Jail to resolve defendants' tax liability on April 20, 2004; the plea agreements entailed many drafts between the parties; and defendants personally made last-minute changes to several paragraphs in their plea agreements.

In the end, the Court is convinced that the circumstances underlying the entry of the guilty pleas involved a long and detailed process in which retained counsel and defendants took active

19

roles in carefully negotiating the terms of their plea agreements. Additionally, defendant Stefaniak's arguments about the indictment being obtained improperly, his plea agreement being obtained during a painful illness, and new evidence being available, which have been raised again with respect to this factor, have already been addressed. For these reasons, defendants have not shown a fair and just reason to withdraw their guilty pleas under this factor.

### 5. The defendant's nature and background and the degree to which the defendant has had prior experience with the criminal justice system

The next two factors for the Court's consideration – the defendant's nature and background and the degree to which the defendant has had prior experience with the criminal justice system – will be analyzed together. Both defendants state that they have no criminal history and very little experience with the criminal justice system.

The Court finds Judge Shirley's factual and credibility determinations about defendants following lengthy detention hearings to be particularly instructive on these factors. With regard to defendant Stefaniak, Judge Shirley concluded that he was a flight risk in part because:

> ...[H]is actions as indicated in the testimony, including his apparent gambling expertise, his ability to obtain large sums of money, his methodical use of aliases and his use of corporate entities to hold assets indicates an intelligent, cunning, and a deceptive individual.

[Doc. 29 at p. 15]. Likewise, Judge Shirley found defendant Jensen to be a flight risk for the same or similar reasons [*see* Doc. 45]. Regardless of their lack of criminal history and experience with the criminal justice system, the record demonstrates that defendants' nature and background provide no fair and just reason to withdraw their guilty pleas under these factors.

### 6. Potential prejudice to the government if the motion to withdraw is granted

The final factor to be considered by the Court is the potential prejudice to the government if the motion to withdraw is granted. Any fair and just reason presented by a defendant must always be balanced against prejudice to the government. *United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003). However, prejudice to the government need not be considered unless the defendant has established a fair and just reason to withdraw his guilty plea. *Alexander*, 384 F.2d at 1002. Although defendants have failed to provide a fair and just reason, the Court will briefly consider this factor.

Defendants argue there would be no prejudice to the government because the AUSA has made an informal offer to allow the withdrawals. Again, the government denies that it ever made such an offer and strongly opposes the motions to withdraw. Prejudice to the government can include wasted government resources, which in turn can include potential wasted judicial resources. *See United States v. Carr*, 740 F.2d 339, 345-46 (5th Cir. 1984), *cert. denied* 471 U.S. 1004 (1985). As pointed out by the government, if defendants were allowed to withdraw their guilty pleas, numerous pretrial motions and lengthy evidentiary hearings would have to be revisited and decided both at the Magistrate Judge level and the District Court level; witnesses would have to be re-interviewed and inconvenienced again; and the trial, which was scheduled to last ten days, would have to be rescheduled to comply with the Speedy Trial Act. Clearly, there is a showing of prejudice where government and judicial resources would be wasted in revisiting a case where defendants have already voluntarily plead guilty. Thus, defendants have not presented a fair and just reason to permit the withdrawal of their guilty pleas under this factor.

**C. Discussion of Fed. R. Crim. P. 11(c)(5) as to Defendant Jensen**

21

At the hearing on the motion to withdraw her guilty plea, defendant Jensen also argued that she should be able to withdraw her guilty plea pursuant to Fed. R. Crim. P. 11(c)(5)[5] because the Court has rejected her plea agreement in failing to honor the mandatory application of the Sentencing Guidelines provided in her plea agreement following the *Booker* decision. Defendant Jensen filed a memorandum [Doc. 145] on the subject on March 14, 2005, and the government filed a supplemental response [Doc. 147] two days later.

As discussed at length above, the change in the law making the Sentencing Guidelines advisory in *Booker* cannot undo either defendants' guilty pleas in this case. *See Bradley*, 400 F.3d at 463-64. Moreover, it appears that defendant Jensen is arguing that the Court rejected her plea agreement under Fed. R. Crim. P. 11(c)(5) in order to avoid the requirement of showing a fair and just reason under Fed. R. Crim. P. 11(d)(2)(B). Fed. R. Crim. P. 11(c)(5) has no application to defendant Jensen and does not alter the Court's conclusion that she has failed to articulate a fair and just reason for withdrawing her guilty plea.

## III.    Remaining Motions

---

[5] Fed. R. Crim. P. 11(c)(5) provides in pertinent part:

> If the court rejects a plea agreement containing provisions of the type specified in Rule 11(c)(1)(A), the court must do the following on the record and in open court ...:
> (A) inform the parties that the court rejects the plea agreement;
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

The remaining motions can be resolved in short measure. Defendant Stefaniak's motion to dismiss indictment [Doc. 149], defendant Jensen's motion for evidentiary hearing on motion to dismiss indictment [Doc. 155], and defendant Stefaniak's motion for evidentiary hearing [Doc. 165] will be denied. As grounds for the motion to dismiss, defendant Stefaniak states that "the indictments were obtained defectively, pursuant to Fed. Rules of Crim. Procedure 12(b)(3)(A), by the use of lies, half-truths, exaggerations, and improper manipulations, or alternatively, ... the testimony was improper and that the indictments based on such testimony would be a violation of [his] due process rights" [Doc. 149 at p. 1]. Naturally, this is defendant Stefaniak's interpretation of the evidence; yet, he admits that the Court may find the statements at issue to be "mistakes or innocuous" [Doc. 150 at p. 17]. At this stage of the proceedings, a defendant is precluded from challenging the sufficiency of the evidence because by pleading guilty every essential element of the offense is admitted. *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982). Both defendants have plead guilty in this case and therefore cannot challenge the sufficiency of the evidence on such a basis at this point in time.

Next, defendant Stefaniak's motion to clarify or amend pretrial release conditions, or alternatively, motion for judicial review of application of conditions [Doc. 159] and defendant Jensen's motion to restore prior conditions of release or for findings of fact [Doc. 162] will be denied. Defendants seek release from the condition prohibiting them from traveling to North Carolina. Defendant Stefaniak states that his intention to return to North Carolina is solely for the purpose of using future casino winnings to pay past due taxes to the IRS. The Court will not sanction such behavior by either defendant and allow them to gamble for the purpose of paying past due taxes. This is especially true in this case given that defendants have a history of losing a

substantial amount of money in their gambling activities [*see* Doc. 161 at pp. 5-7 and Doc. 164 at p. 3]. These motions are totally without merit.

In addition, defendant Stefaniak and defendant Jensen have each filed a *pro se* "motion to examine criminal sworn testimony, react appropriately and dismiss indictments" [Docs. 166, 168], which will be denied. E.D.TN. LR 83.4(c) prohibits a party from acting on his or her own behalf after appearing by counsel. Defendants have violated this local rule and therefore the Court will not consider their arguments, which substantially mirror the motion to dismiss already addressed.

Finally, the motion to withdraw [Doc. 171] filed by counsel for defendant Jensen will be granted. The Court notes that defendant Jensen has filed a *pro se* letter in support of the motion to withdraw [Doc. 173], and the government has filed a response stating no objection [*see* Doc. 174]. Accordingly, attorney Michael H. Meares will be permitted to withdraw as counsel of record for defendant Jensen and he will be discharged from all further duties and responsibilities in this matter. Defendant Jensen will be instructed to notify the Court in writing within fifteen business days whether she intends to represent herself in all further proceedings including sentencing or whether she intends to retain counsel to do so.


**IV.     Conclusion**

For the reasons stated herein, the following motions are hereby DENIED: motion to withdraw plea of guilty [Doc. 138]; motion to withdraw plea of guilty [Doc. 139]; motion to dismiss indictment [Doc. 149]; motion for evidentiary hearing on motion to dismiss indictment [Doc. 155]; motion to clarify or amend pre-trial release conditions, or alternatively, motion for judicial review of application of conditions [Doc. 159]; motion to restore prior conditions of release or for findings

of fact [Doc. 162]; motion for evidentiary hearing [Doc. 165]; *pro se* "motion to examine criminal sworn testimony, react appropriately and dismiss indictments" [Doc. 166]; and *pro se* "motion to examine criminal sworn testimony, react appropriately and dismiss indictments" [Doc. 168]. The motion to adopt co-defendant's motion to dismiss indictment [Doc. 151] is hereby GRANTED whereby the Court has considered all arguments raised by defendant Stefaniak in the context of defendant Jensen's case. The motion to withdraw [Doc. 171] is hereby GRANTED whereby attorney Meares is RELIEVED from all further representation of defendant Jensen in this matter and this defendant will have fifteen business days to inform the Court in writing whether she intends to represent herself or to retain counsel. This matter is hereby SCHEDULED for sentencing for defendant Stefaniak and defendant Jensen on November 30, 2005 at 10:00 a.m. and 11:00 a.m. respectively.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE